UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

THE ANNUITY, WELFARE AND
APPRENTICESHIP SKILL
IMPROVEMENT & SAFETY FUNDS OF
THE INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 15,
15A, 15C & 15D, AFL-CIO, by their
Trustees James T. Callahan, Thomas A.
Callahan, Michael Salgo, and William
Tyson; CENTRAL PENSION FUND OF
THE INTERNATIONAL UNION OF
OPERATING ENGINEERS, by its Chief
Executive Officer Joseph Shelton; and
INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 15,
15A, 15C & 15D, AFL-CIO, by its
President and Business Manager Thomas
A. Callahan,

                        Plaintiffs,

               -against-

CONCRETE INDUSTRIES ONE CORP.,

                        Defendant.

---------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
22-CV-6080 (ENV) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiffs the Annuity, Welfare, and Apprenticeship, Skill Improvement and

Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C &

15D, AFL-CIO, by their Trustees James T. Callahan, Thomas A. Callahan, Michael Salgo,

and William Tyson; the Central Pension Fund of the International Union of Operating

Engineers, by its Chief Executive Officer Joseph Shelton; and the International Union of

Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO, by its President and Business

Manager Thomas A. Callahan, initiated this action against Defendant Concrete

Industries One Corp. on October 11, 2022. (Complaint ("Compl."), ECF No. 1.) Plaintiffs seek delinquent benefit contributions and related relief under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), *see* 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301(a) of the Labor Management Relations Act ("LMRA"), *see* 29 U.S.C. § 185. (*See* Compl., ECF No 1.)

Currently before the Court is Plaintiffs' motion for default judgment, which the Honorable Eric N. Vitaliano referred to the undersigned magistrate judge for a report and recommendation. (Mot. for Default J., ECF No. 8; April 3, 2023 ECF Order.) For the reasons set forth below, the Court respectfully recommends granting Plaintiffs' motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  Factual Background

The International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ("the Union") is a labor organization as defined in Section 2 of the LMRA. (Compl., ECF No. 1, ¶ 13.) The Union collectively bargains with employers, including Defendant, a New York corporation, on behalf of Union employees engaged in heavy construction work. (General Contractors Association & Operating Engineers Agreement ("CBA"), ECF No. 12-3, Art. I § 1.)

The Union and Defendant entered into a collective bargaining agreement, effective July 1, 2018, through June 30, 2022.[1] (*See* Local 15/Concrete Industries One Agreement, ECF No. 12-2; CBA, ECF No. 12-3; *see also* Aff. of T. Callahan, ECF No. 9, ¶ 3.) Under the CBA, Defendant agreed to make contributions to the Annuity, Welfare,

---

[1] Defendant appears to have been a signatory as early as February 13, 2009, under a prior iteration of the CBA. (*See* Local 15/Concrete Industries One Agreement, ECF No. 12-2, ¶ 1.) Plaintiff alleges that Defendant "formally opt[ed] out of the [CBA] effective July 1, 2021." (Compl., ECF No. 1, ¶ 19.) Plaintiff seeks delinquent contributions only for the period governed by the July 1, 2018 to June 30, 2022 version of the CBA. (*See generally id.*)

and Apprenticeship, Skill Improvement and Safety Funds, as well as the Central Pension Fund (collectively, the "Funds"), based on hours of work performed by Union employees. (Compl., ECF No. 1, ¶ 20; CBA, ECF No. 12-3, art. XI §§ (B)(1)–(3), (5), (8).) Defendant also agreed to pay supplemental dues and political action committee payments to the Union, also based on hours worked by Union employees. (Compl., ECF No. 1, ¶ 21; Local 15/GCA Agreement, ECF No. 12-3, arts. XI § (B)(7), XV.)

## II.  Procedural History

Plaintiffs initiated this action after an audit of Defendant's records revealed delinquencies in Defendant's contributions. (*See* Compl., ECF No. 1, ¶¶ 23–24.) The audit, completed in September 2022, showed that Defendant failed to provide contractually required contributions and supplemental payments for the period of July 1, 2018 through June 30, 2021. (*Id.* ¶ 24.)

As noted, Plaintiffs filed the complaint on October 11, 2022. (*See id.*) The Clerk of Court issued summons, and Plaintiffs filed proof of service on October 28, 2022. (*See* Summons Issued, ECF No. 4; Proof of Service, ECF No. 5.) After Defendant failed to respond to the complaint, Plaintiffs requested a certificate of default on November 14, 2022. (*See* Req. for Certificate of Default, ECF No. 6.) The Clerk of Court issued a certificate of default the following day, and, on November 18, 2022, Plaintiffs moved for default judgment. (*See* Clerk's Entry of Default, ECF. No. 7; Notice of Mot. for Default J., ECF No. 8.) The Honorable Eric N. Vitaliano later referred Plaintiffs' motion to the undersigned magistrate judge for a report and recommendation. (*See* April 3, 2023 ECF Order.)

On April 17, 2023, the Court scheduled a hearing for May 16, 2023. (*See* Apr. 17, 2023 ECF Scheduling Order.) The Court also directed the Clerk of Court to mail copies of the scheduling order to Defendant, along with written notices of Plaintiffs' motion

3

for default judgment and a copy of the docket sheet, to the address on file with the New York Secretary of State and other addresses potentially associated with Defendant.[2] (*See id.*)

The Court held the scheduled hearing on May 16, 2023. (May 16, 2023 ECF Minute Entry and Order.) Although an attorney attended the hearing on Defendant's behalf, he was not at that time authorized to enter a notice of appearance. (*See id.*; *see also* Letter, ECF No. 17.) In light of the attorney's attendance at the hearing, the Court directed him to file a notice of appearance if possible and scheduled a status conference for June 15, 2023. (*See* May 16, 2023 ECF Minute Entry and Order.)

The attorney subsequently filed a letter on June 5, 2023, notifying the Court that, following the motion hearing, "it was determined that [he would] not be entering a general appearance in this case on behalf of Defendant." (*See* Letter, ECF No. 17, at 1.) The attorney further indicated that, per his understanding, "no other attorney [would] be appearing at the [June 15, 2023] status conference on behalf of Defendant." (*See id.* at 2.) The Court then adjourned the scheduled status conference and took Plaintiffs' pending motion under advisement. (*See* June 8, 2023 ECF Order.)

## DISCUSSION

### I. Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a

---

[2] One of the mailings was returned as undeliverable. (*See* May 3, 2023 Mail Returned as Undeliverable, ECF No. 16.)

default judgment. Fed. R. Civ. P. 55(b)(2); *see also* E.D.N.Y. Local Civ. R. 55.2(b). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[3] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d

---

[3] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having carefully reviewed the filings in this case, the Court finds that Plaintiffs' motion papers comport with these rules. Specifically, Plaintiffs (1) requested a certificate of default in accordance with Local Rule 55.1(a) (*see* Req. for Certificate of Default, ECF No. 6); (2) filed an affidavit demonstrating that Defendant has failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(b) (*see* Decl. of James Steinberg, ECF No. 6-1; *see also* Aff. of James Steinberg, ECF No. 12); and (3) certified the mailing of the motion papers to Defendant's last known business address, in accordance with Local Rule 55.2(c). (*See* Certificate of Service, ECF No. 14.)

Cir. 1999). Here, too, the "plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989))).

## II.  Analysis

### A.  Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

#### 1.  *Willfulness*

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a

defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g., United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. 3d at 81.

Defendant's failure to respond or otherwise appear in this action supports a finding of willfulness. The Court notes that Plaintiffs adequately served Defendant by delivering the summons and complaint to the New York Secretary of State, as permitted by New York law. (*See* Proof of Service, ECF No. 5.) *See* N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(e)(1) & (h)(1). Defendant failed to respond within twenty-one days of service. (*See* Proof of Service, ECF No. 5.) Defendant likewise failed to formally respond after Plaintiffs moved for default judgment and after receiving notice of the motion both from Plaintiffs and the Clerk of Court. (*See* Certificate of Service, ECF No. 14; Apr. 17, 2023 ECF Order; Notice to Defendant, ECF No. 15.) Moreover, as set forth above, an attorney attended the May 16, 2023 motion hearing on Defendant's behalf, but no notice of appearance was ever filed and the attorney's subsequent letter made clear that no attorney would be appearing for Defendant. (*See* May 16, 2023 ECF Minute Entry and Order; Letter, ECF No. 17, at 2.) To date, Defendant has failed to respond to the complaint, despite receiving notice at least three times of this case, and having actual knowledge of it, as demonstrated by the attorney's attendance at the May 16, 2023 motion hearing. Accordingly, the Court weighs this factor in favor of default.

2. *Meritorious Defense*

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. v. Eagle Ins.*, 92 F.3d 57, 61 (2d Cir.

1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

3. *Prejudice*

"The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendant's failure to respond to both Plaintiffs' and the Court's notices, "there is no indication that requiring Plaintiffs to take further steps . . . would be effective in eliciting a response from Defendant[]." *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiffs would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiffs' motion, the Court recommends entering a default judgment.

**B. Liability**

Plaintiffs have also adequately alleged Defendant's liability in this matter. Specifically, Plaintiffs allege that Defendant (1) violated its obligations under the CBA by failing to make contributions to funds governed by ERISA, and (2) breached the CBA by failing to make supplemental dues and political action committee payments (non-

ERISA covered contributions). (*See generally* Compl., ECF No. 1.) The court addresses these claims in turn.

1. *ERISA Violations*

Plaintiffs allege that Defendant violated ERISA by failing to make required contributions to each of the Funds. (*Id.* ¶¶ 29–30.) The Court finds that Plaintiffs' allegations sufficiently establish Defendant's liability in this regard.

Under Section 515 of ERISA,

Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; *see also id.* § 1132(g)(2) (stating, *inter alia*, that if there is a judgment in favor of a "fiduciary for or on behalf of a plan" seeking to enforce § 1145, "the court shall award the plan . . . the unpaid contributions," as well as "interest on the unpaid contributions" and "liquidated damages"). Relatedly, Section 301 of the LMRA provides a federal cause of action for "violation[s] of contracts between an employer and a labor organization representing employees . . . or between any such labor organizations." 29 U.S.C. § 185(a). Where an employer fails to make required contributions, plan fiduciaries can bring a civil action to enforce the terms of the plan. *See* 29 U.S.C. § 1132(a)(3).

Plaintiffs have adequately alleged their entitlement to such relief. As alleged in the complaint, Defendant is an employer in an industry affecting commerce as defined by ERISA, and the Funds are multiemployer plans governed by ERISA to which

Defendant was obligated to contribute under the CBA.[4] (*See* Compl., ECF No. 1, ¶¶ 8, 12, 18, 21.) This action was brought by fiduciaries of the Funds, i.e., their trustees and CEO. (*Id.* ¶¶ 5, 10.) *See LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (explaining the broad, functional definition of fiduciaries under ERISA). Moreover, Plaintiffs have alleged that Defendant failed to make required contributions during the relevant period: July 1, 2018, to June 30, 2021. (Compl., ECF No. 1, ¶ 29.) Given these unrebutted allegations in the complaint, the Court finds that Plaintiffs have sufficiently alleged Defendant's liability as to their ERISA claim.[5]

2.  *Breach of the CBA*

Plaintiffs allege that Defendant also breached the CBA by failing to pay supplemental union dues and political action committee payments. Here, too, the Court concludes that the complaint adequately pleads Defendant's liability.

---

[4] "An ERISA 'employer' is defined as 'any person acting directly as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan.'" *Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 285 (2d Cir. 2014) (quoting 29 U.S.C. § 1002(5).) "The term 'multiemployer plan' means a plan — (i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and (iii) which satisfies such other requirements as the Secretary [of Labor] may prescribe by regulation." 29 U.S.C. § 1002(37)(A).

[5] The Court notes that Plaintiffs' claims are timely. "In lieu of an ERISA-specific limitations period, courts normally apply the limitations period specified 'in the most nearly analogous state limitations statute,'" i.e., New York's six-year statute of limitations for contract actions. *Landry v. Metro. Life. Ins.*, No. 19-CV-3385 (KPF), 2021 WL 848455, at *7 (S.D.N.Y. Mar. 5, 2021) (quoting *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (per curiam) (citing N.Y. C.P.L.R. § 213)). The same statute of limitations applies to ordinary LMRA claims. *See O'Hare v. Gen. Marine Transp. Corp.*, 740 F.2d 160, 167–68 (2d Cir. 1984); *see also Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 338–41 (E.D.N.Y. 2009). Plaintiffs' claims fall well within the applicable six-year period.

The LMRA authorizes suit in federal court "for violation[s] of contracts between an employer and a labor organization[6] representing employees." 29 U.S.C. § 185(a). Accordingly, where an employer violates the terms of a CBA, a "labor organization may sue . . . in behalf of the employees whom it represents." *Id.* § 185(b).

Plaintiffs have adequately alleged entitlement to relief under the LMRA. Per the allegations in the complaint, the Union is a qualifying labor organization, the CBA is a contract between the Union and the Defendant (an employer), and Defendant was bound by the CBA at all relevant times. (Compl., ECF No. 1, ¶¶ 13, 18–21.) The complaint also alleges that, although Defendant was obligated under the CBA to pay "supplemental union dues and political action committee payments," Defendant failed to make required payments "for the period of July 1, 2018 through June 30, 2021." (*Id.* ¶¶ 23–24.) Based on these allegations, the Court finds that Plaintiffs have adequately established Defendant's liability for breaching the CBA.

## III. Damages

Having found that Defendant's default constitutes an admission of liability with respect to each of Plaintiffs' claims and that entry of default is warranted, the Court now determines the appropriate damages. *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011) ("The court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment.").

"Section 502 of ERISA sets forth the damages that are recoverable for an employer's failure to remit contributions as required by Section 515 of ERISA." *Finkel v.*

---

[6] A "'labor organization' means any organization . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5).

*Colony Elec. Co.*, No. 10-CV-2240 (FB) (LB), 2010 WL 5665042, at *4 (E.D.N.Y. Nov. 8, 2010), *report and recommendation adopted*, 2011 WL 346738 (E.D.N.Y. Feb. 1, 2011). It provides as follows:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —
>
> (A)    the unpaid contributions,
>
> (B)    interest on the unpaid contributions,
>
> (C)    an amount equal to the greater of —
>
> (i)  interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E)    such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). For LMRA claims, plaintiffs may only recover the damages provided for in the contract itself. *See Colony Elec. Co.*, 2010 WL 5665042, at *4.

Here, Plaintiffs assert that they are entitled to delinquent ERISA contributions and non-ERISA contributions, plus prejudgment interest and liquidated damages. Plaintiffs also request attorney's fees, costs, and auditor's fees. The Court recommends awarding damages as follows.

**A.  Delinquent ERISA and Non-ERISA Contributions**

The CBA requires Defendant to make contributions to the Funds at rates corresponding to the covered employees' work shifts. (*See* CBA, ECF No. 12-3, art. XI §§ (B)(1)–(3), (5), (8).) These contributions were to be "paid through the purchase of

stamps from [Plaintiffs'] Fund Office." (Affidavit of Catherine Chase ("Chase Aff."), ECF No. 10, ¶ 2; CBA, ECF No. 12-3, art. XI § (B)(10); *see also id.* art. XI §§ (B)(1)–(3), (5), (8).) Employees were to collect stamps Defendant issued them, then, once a year, "submit their stamp books to the Fund Office for redemption." (Chase Aff., ECF No. 10, ¶ 4.) "A record of the stamps redeemed by each employee is maintained by" the Funds themselves. (*Id.*)

Plaintiffs have submitted an affidavit from the payroll audit manager for the accounting firm that audited Defendant's records, as well as the report generated after the audit. (Aff. of Lisa Madeiras ("Madeiras Aff."), ECF No. 11, ¶ 1; Audit Report, ECF Nos. 12-8 & 19.) The report calculates the difference between the number of hours worked by Union employees and the hours for which Defendant made contributions to the Funds, for each year during the relevant period. (*See* Madeiras Aff., ECF No. 11, ¶ 4; Audit Report, ECF No. 12-8, at ECF pp. 3–5 & ECF No. 19 at ECF pp. 2–4.) The report then multiplies those numbers by the applicable stamp rate for each Fund (both for regular and overtime hours of work) to determine the amount of Defendant's delinquent ERISA-covered contributions. (*See* Madeiras Aff., ECF No. 11, ¶ 5; Audit Report, ECF No. 12-8, at ECF pp. 3–5 & ECF No. 19 at ECF pp. 2–4.) Having carefully reviewed the report, as well as the affidavits and exhibits submitted in support of Plaintiffs' motion, the Court finds that Plaintiffs have accurately calculated Defendant's delinquent ERISA-covered contributions from July 1, 2018 through June 30, 2021, totaling $80,778.05.

The report also indicates that Defendant owes delinquent supplemental dues and political action committee payments. (*See* Audit Report, ECF No. 12-8, at ECF pp. 3–5 & ECF No. 19, at ECF pp. 2–4.) Like the ERISA contributions, the CBA obligated Defendant to make these payments at rates per hour of work performed by Union

employees. (*See* CBA, ECF No. 12-3, arts. XI § (B)(7), XV.) The report calculates

Defendant's delinquent payments in the same manner as that described above, using

the applicable stamp rates for supplemental dues and political action committee

payments. (*See* Audit Report, ECF No. 12-8, at ECF pp. 3–5 & ECF No. 19, at ECF pp. 2–

4.) Based on the affidavits and exhibits submitted in support of Plaintiffs' motion, the

Court finds that Plaintiffs are entitled to $6,995.45 in unpaid supplemental dues and

political action committee payments.

**B. Prejudgment Interest**

    1. *ERISA Contributions*

    ERISA states that "interest on unpaid contributions shall be determined by using

the rate provided under the plan," if any. 29 U.S.C. § 1132(g)(2). In this case, the trust

documents authorize Plaintiffs to collect interest on delinquent contributions "at the

rate of six percent (6%) per annum" — except for funds owed to the Central Pension

Fund, which accrue interest "at the rate of 9% simple interest."[7] (*See* Amend. to

Agreement & Decl. of Trust for the Annuity Fund ("Annuity Fund Amend."), ECF

No. 12-4, Art. V § 6, at ECF p. 22; Amend. to Agreement & Decl. of Trust for the Welfare

Fund ("Welfare Fund Amend."), ECF No. 12-5, Art. VII § 8, at ECF p. 31; Amend. to the

Agreement & Decl. of Trust for the Apprenticeship, Skill, Improvement & Safety Fund

("Apprenticeship Fund Amend."), ECF No. 12-6, Art. V § 6, at ECF p. 18; National

---

[7] Although not specifically detailed in the Agreement and Declaration of Trust for the Central Pension Fund, Plaintiffs' calculation of interest on unpaid contributions to the Central Pension Fund appears to presume that it is to be accrued annually, like the other Trust Funds. (*See* Restated Agreement & Decl. of Trust of the CPF ("CPF Agreement"), ECF No. 12-7, Art. IV § 4.5(c).) The Court therefore calculates prejudgment interest for unpaid contributions to the Central Pension Fund at a 9% annual rate. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D v. Genrus Corp.*, No. 20-CV-4980 (MKB) (RER), 2021 WL 4755704, at *4 (E.D.N.Y. Aug. 16, 2021), *report and recommendation adopted*, 2021 WL 3928952 (E.D.N.Y. Sept. 2, 2021).

Training Fund Participation Agreement, ECF No. 18-1 ("NTF Agreement");[8] Restated

Agreement & Decl. of Trust of the CPF ("CPF Agreement"), ECF No. 12-7, Art. IV

§ 4.5(c).) Neither Plaintiffs nor the trust documents specify the date on which interest is

to accrue on delinquent contributions. Plaintiffs' submissions suggest, however, that

interest was calculated with respect to each contract year, i.e., July 1 through June 30,

such that interest accrued on the day immediately following a contract year for which

contributions were owing.

Specifically, Plaintiffs have used the following formula to calculate prejudgment

interest with respect to the unpaid contributions owed, per year:

> (number of days) x (applicable interest rate of either 6.0% or 9.0%) / (365
> days) x (amount owed in contributions)

(Madeiras Aff., ECF No. 11, ¶ 6.) The Court recommends an award of prejudgment

interest through the date of judgment, using this same formula. *See Annuity, Welfare &*

*Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs.,*

*Local 15, 15A, 15C & 15D ex rel. Callahan v. Carlo Lizza & Sons Paving, Inc.*, No. 19-CV-

2461 (BMC) (LB), 2019 WL 5694053, at *5 (E.D.N.Y. Aug. 22, 2019) (using same formula);

*Annuity, Welfare, & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of*

*Operating Eng'rs Local 15, 15A, 15C & 15D ex rel. Callahan v. Barbella Env't Tech., Inc.*,

No. 17-CV-4397 (CBA) (RLM), 2018 WL 4403393, at *5 (E.D.N.Y. Mar. 1, 2018) (same).

---

[8] The Court notes that, on March 16, 2022, the Apprenticeship Skill Improvement & Safety Fund ("Apprenticeship Fund") entered into a partnership agreement with the International Union of Operating Engineers National Training Fund ("NTF") whereby the Apprenticeship Fund agreed to collect and remit $0.05 per hour to the NTF. (NTF Agreement, ECF No. 18-1, at 2, 7.) Because the NTF contributions are collected by the Apprenticeship Fund, the collections are subject to the terms and conditions of the Apprenticeship Fund agreements, including the 6% interest rate applicable to delinquent contributions. (*See* Apprenticeship Fund Amend., ECF No. 12-6, Art. V § 6, at ECF p. 18; Pls.' Ltr. dated July 25, 2023, ECF No. 18.)

As of the date of this Report and Recommendation ("R&R"), August 9, 2023, the total interest for unpaid ERISA contributions is $15,522.68.[9] Plaintiffs are also entitled to prejudgment interest calculated from the date of this R&R through the date that the Clerk of Court enters final judgment at a per diem rate of $14.51.[10]

2.  *Non-ERISA Contributions*

Because the LMRA allows labor unions "to sue in federal court for breaches of state-law labor contracts, the rate under [N.Y. C.P.L.R.] section 5004 is appropriate" when calculating prejudgment interest on non-ERISA contributions. *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs, Local 14-14B ex rel. Christian v. Superior Site Work, Inc.*, No. 15-CV-543 (MKB), 2017 WL 639248, at *8 (E.D.N.Y. Feb. 16, 2017) (citing 29 U.S.C. § 185(a)). Section 5004 sets forth a 9% annual

---

[9] Interest is calculated as follows, with all ERISA contributions except for the Central Pension Fund contributions included in the "Non-CPF" category. The first number represents the number of days between the end of the year during which the unpaid contributions accrued, i.e., July 1st, and the date of this R&R, August 9, 2023 (inclusive of the end date).

- 2018–19 Non-CPF Interest = 1,501 x .06 / 365 x $12,257.85 = $3,024.50
- 2018–19 CPF Interest = 1,501 x .09 / 365 x $2,664.00 = $985.97
- 2019–20 Non-CPF Interest = 1,135 x .06 / 365 x $29,475.80 = $5,499.46
- 2019–20 CPF Interest = 1,135 x .09 / 365 x $7,007.80 = $1,961.22
- 2020–21 Non-CPF Interest = 770 x .06 / 365 x $24,100.10 = $3,050.48
- 2020–21 CPF Interest = 770 x .09 / 365 x $5,272.50 = $1,001.05

[10] The daily prejudgment interest rate for delinquent contributions is determined by dividing the applicable interest rate by 365 and multiplying that rate by the unpaid contribution amount for a given year of delinquencies, as follows. For the unpaid Non-CPF contributions from 2018–19, the rate is $2.01 (.06/365 x $12,257.85). For 2019–20, the rate is $4.85 (.06/365 x $29,475.80) and, for 2020–21, the rate is $3.96 (.06/365 x $24,100.10). Accordingly, the daily prejudgment interest rate for Non-CPF contributions is $10.82 ($2.01 + $4.85 + $3.96). The daily interest rate for unpaid CPF contributions from 2018–19 is $0.66 (.09/365 x $2,664.00); for 2019–20, the rate is $1.73 (.09/365 x $7,007.80); and for 2020–21, the rate is $1.30 (.09/365 x $5,272.50). The daily prejudgment interest rate for all CPF contributions is therefore $3.69 ($0.66 + $1.73 + $1.30). Taken together, the total daily prejudgment interest rate for all unpaid contributions is $14.51 ($10.82 + $3.69).

16

interest rate, which, in this case, should be calculated "'from a midpoint date in the delinquency period.'" *Id.* at *9 (citing N.Y. C.P.L.R. §§ 5001(b), 5004) (quoting *Alston v. Northstar La Guardia LLC*, No. 10-CV-3611 (LAK) (GWG), 2010 WL 3432307, at *3 (S.D.N.Y. Sept. 3, 2010)).

Here, Defendant was delinquent in its contributions for the period of July 1, 2018, to June 30, 2021. (*See* Audit Report, ECF Nos. 12-8 & 19.) The midpoint between those dates is approximately December 31, 2019. The Court therefore recommends an award of $2,273.43 in total interest owed on the unpaid non-ERISA contributions.[11] The Court further recommends an award of interest calculated from August 9, 2023, through the date that the Clerk of Court enters final judgment at a per diem rate of $1.72.[12]

## C. Liquidated Damages

Plaintiffs also request "liquidated damages provided for under the plan[s]." (Mem. in Supp. of Default J., ECF No. 13, at 9; *see also* Statement of Damages, ECF No. 8-1.) The Court notes that the trust documents entitle Plaintiffs to liquidated damages equal to 10% of the delinquent ERISA contributions — again, with the exception of the Central Pension Fund, which entitles Plaintiffs to 20%. (*See* Annuity Fund Amend., ECF No. 12-4, Art. V § 6, at ECF p. 22; Welfare Fund Amend., ECF No. 12-5, Art. VII § 8, at ECF p. 31; Apprenticeship Fund Amend., ECF No. 12-6, Art. V § 6, at ECF p. 18; CPF Agreement, ECF No. 12-7, Art. IV § 4.5(b).) Accordingly, Plaintiffs request liquidated

---

[11] The interest on the non-ERISA contributions is calculated from the date of accrual (the reasonable midpoint date of December 31, 2019) through the date of this R&R as follows, with the first number representing the number of days between December 31, 2019, and the date of this R&R, August 9, 2023 (inclusive of the end date), at a rate of 9% interest: 1,318 x .09/365 x $6,995.45 = $2,273.43.

[12] The daily interest rate for non-ERISA contributions is calculated based on the total outstanding delinquent non-ERISA contributions and a 9% interest rate, as follows: .09/365 x $6,995.45 = $1.72.

damages on Defendant's unpaid ERISA contributions pursuant to the trust documents, in the amount of $9,572.24. ($6,583.38 [$65,833.75 x .1] + $2,988.86 [$14,944.30 x .2] = $9,572.24.) (*See* Mem. in Supp. of Default J., ECF No. 13, at 9; Audit Report, ECF No. 19, at 1.)

The Court is required, however, to award liquidated damages in an amount greater than what Plaintiffs have requested. The relevant statutory provision states that "the court *shall* award . . . an amount equal to the greater of — (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid ERISA contributions. 28 U.S.C. § 1132(g)(2) (emphasis added). Therefore, notwithstanding Plaintiffs' entitlement to liquidated damages under the trust documents, ERISA contemplates "a mandatory award of . . . liquidated damages in an amount at least equal to" prejudgment interest. *Superior Site Work, Inc.*, 2017 WL 639248, at *5 (quotation marks omitted); *see also Durso v. Almonte Beach Food Corp.*, No. 17-CV-6673 (SJF) (ARL), 2021 WL 493398, at *6–7 (E.D.N.Y. Feb. 10, 2021); *Bldg. Serv. 32BJ Health Fund v. Hughes Contracting Indus. Ltd.*, No. 14-CV-9581 (SN), 2017 WL 2169302, at *1–2 (S.D.N.Y. May 17, 2017). Here, because the recommended award of prejudgment interest for unpaid ERISA contributions exceeds the amount of liquidated damages provided for under the trust documents, the Court recommends an award of liquidated damages equal to the award of prejudgment interest: $15,522.68, plus an award equivalent to the per diem prejudgment interest calculated by the Clerk of Court at a rate of $14.51 from the date of this R&R through the entry of final judgment.

### D. Other Awards

1. *Attorney's Fees*

Although ERISA mandates the recovery of attorney's fees in any successful action to recover delinquent contributions, courts have broad discretion in determining what constitutes a reasonable attorney's fee. *See* 29 U.S.C. § 1132(g)(2)(D); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). In this Circuit, a reasonable attorney's fee is based on a number of factors, including the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, awards given in similar cases, and the experience, reputation, and ability of the attorney. *See Arbor Hill*, 522 F.3d at 186 n.3, 190. Further, under the "forum rule," courts typically assess an attorney's requested hourly rate by comparison to other rates awarded in the district in which the reviewing court sits. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–76 (2d Cir. 2009).

Once a court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190; *see also Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a presumptively reasonable fee." (quotation marks omitted)). With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) (per curiam) (quotation marks omitted); *see also Universal Elec. Corp.*, 970 F. Supp. 2d at 128.

In this case, Plaintiffs seek a $2,870.00 attorney's fee for 7.0 hours of work, billed at a rate of $410.00 per hour. (*See* Billing Records, attached as Ex. K to Steinberg Aff.,

ECF No. 12-11; Mem. in Supp. of Default J., ECF No. 13, at 9–12.) Reasonable hourly

rates in this district range "from $300 to $450 per hour for partners . . . and $70 to $100

per hour for paralegals." *Ret. Fund of Loc. 1482 Paint & Allied Prod. Mfrs. v. N. Adhesives,*

*Inc.*, No. 19-CV-5609 (MKB) (RER), 2020 WL 6370060, at *4 (E.D.N.Y. May 27, 2020),

*report and recommendation adopted*, 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020); *see also Trs.*

*of Pavers & Road Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill*

*Improvement & Safety Funds v. Shelbourne Constr. Corp.*, No. 19-CV-2312 (ARR) (PK), 2020

WL 1668041, at *8 (E.D.N.Y. Mar. 5, 2020), *report and recommendation adopted*, 2020 WL

1666461 (E.D.N.Y. Apr. 3, 2020); *Trs. of Plumbers Local Union No. 1 Welfare Fund,*

*Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(K) Savings*

*Plan v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2018 WL 8452493, at *7

(E.D.N.Y. Dec. 28, 2018), *report and recommendation adopted*, 2019 WL 2301613 (E.D.N.Y.

May 30, 2019).

Here, the attorney, Mr. Steinberg, is a partner with over 28 years of experience

and expertise in labor cases; accordingly, his requested hourly rate of $410.00 is

reasonable. (Steinberg Aff., ECF No. 12, ¶ 11.) Having reviewed Mr. Steinberg's billing

records, the Court also finds that the 7.0 hours of work billed in this case is reasonable.

Accordingly, the Court recommends an award of $2,870.00 in attorney's fees.

 2. *Costs*

"When a prevailing party seeks to recover those costs associated with the

prosecution of an action, the court is permitted to award reasonable expenses incurred

by the attorneys and charged to clients." *N. Adhesives, Inc.*, 2020 WL 6370060, at *5

(citing *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co.*,

270 F. Supp. 3d 593, 628 (E.D.N.Y. 2017)). Plaintiffs request $522.00 in costs related to

this action, comprising a $402.00 filing fee and an additional $120.00 for service of

process. (*See* Mem. in Supp. of Default J., ECF No. 13, at 13–14; Ex. J to Aff. in Supp. of Mot. for Default J., ECF No. 12-10 (invoice for service of process).) The Court finds these costs to be documented and reasonable and, therefore, recommends awarding $522.00 in costs.

   3. *Auditor's Fee*

Plaintiffs also request "an award of $2,032.70 in audit fees incurred as a result of the field audit conducted" in September 2022. (Mem. in Supp. of Default J., ECF No. 13, at 12; Audit Costs, Ex. A to Madeiras Aff., ECF No. 11-1.) Courts routinely award such fees as a form of "other legal or equitable relief" available under ERISA. 29 U.S.C. § 1132(g)(2)(E); *see King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 172 (E.D.N.Y. 2004). The Court also notes that the trust documents provide that delinquent employers shall be responsible for auditor's fees. (*See* Annuity Fund Amend., ECF No. 12-4, Art. V § 6, at ECF p. 22; Welfare Fund Amend., ECF No. 12-5, Art. VII § 8, at ECF p. 31; Apprenticeship Fund Amend., ECF No. 12-6, Art. V § 6, at ECF p. 18; CPF Agreement, ECF No. 12-7, Art. IV § 4.5(e).) Accordingly, the Court recommends an award of $2,032.70 for Plaintiffs' audit fees.

### E. Post-Judgment Interest

Although Plaintiffs here did not specifically request post-judgment interest, the Second Circuit has held that an award of post-judgment interest at the statutory rate prescribed by 28 U.S.C. § 1961(a) is "mandatory." *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004). Section 1961(a) provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). "Moreover, post-judgment interest 'shall be computed daily [from the date of judgment] to the date of payment.'"

*Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(K) Savings Plan v. Temperini Mech. Inc.*, No. 18-CV-2596 (AMD) (LB), 2020 WL 571680, at *3 (E.D.N.Y. Jan. 13, 2020) (alteration in original) (quoting 28 U.S.C. § 1961(b)), *report and recommendation adopted*, 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020). Accordingly, the Court respectfully recommends that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961 on all sums awarded from the date judgment is entered to the date of payment.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted. Plaintiffs should be awarded damages as follows: $87,773.50 for unpaid ERISA and non-ERISA contributions ($80,778.05 + $6,995.45 = $87,773.50); $15,522.68 in prejudgment interest on unpaid ERISA contributions; $2,273.43 in prejudgment interest on unpaid non-ERISA contributions; $15,522.68 in liquidated damages; $2,870.00 in attorney's fees; $522.00 in costs; and $2,032.70 for auditor's fees, for a total of **$126,516.99**. Plaintiffs should also be awarded the following, calculated from August 9, 2023, the date of this Report and Recommendation, through the date the Clerk of Court enters final judgment: (1) additional liquidated damages at a per diem rate of **$14.51**, and (2) prejudgment interest at a per diem rate of **$16.23**, based on a per diem rate of $14.51 on the delinquent ERISA contributions and a per diem rate of $1.72 on delinquent non-ERISA contributions. Finally, Plaintiffs should be awarded post-judgment interest at the rate set forth in 28 U.S.C. § 1961 on the total sum awarded on the date of judgment, accruing through the date of payment.

Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendant by **August 23, 2023**, and to file proof of service with the Court.

\*    \*    \*    \*    \*

Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Eric N. Vitaliano, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated:    Brooklyn, New York
          August 9, 2023

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

23